IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| GREAT AMERICAN E&S INSURANCE COMPANY,<br><br>              Plaintiff,<br><br>  v.<br><br>VIATEK CONSUMER PRODUCTS GROUP, INC.,<br><br>              Defendants. | Case No.  17-850 |

## COMPLAINT FOR DECLARATORY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Great American E&S Insurance Company ("Great American") brings this action against Defendant Viatek Consumer Products Group, Inc. ("Viatek") and respectfully shows the Court as follows:

## INTRODUCTION AND NATURE OF THIS ACTION

1. This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202, and 1332. Great American seeks a determination of the parties' rights and obligations under certain insurance policies issued by Great American to Viatek ("Policies" as further defined *infra*).

2. This declaratory relief action stems from an action already pending in this Court entitled *YETI Coolers, LLC v. Godinger Silver Art, Ltd., Cathy's Concepts, Inc., Viatek Consumer Products Group, Inc.*, United States District Court, Western District of Texas, Austin Division, Case No. 1:17-cv-00467-RP (the "Underlying Action"), alleging that Viatek is liable under claims of trade dress infringement, unfair competition, false designation of origin, trade dress dilution, misappropriation, and unjust enrichment under federal and Texas state law.

3. Viatek asserts that it is entitled to insurance coverage for the Underlying Action under the Policies issued by Great American. Viatek seeks a defense and indemnification from Great American for the Underlying Action.

4. Great American contends that it does not owe insurance coverage to or on behalf of Viatek with respect to the Underlying Action or any of the claims set forth therein under the Policies and applicable law, and therefore has no duty to defend or indemnify Viatek.

## THE PARTIES

5. Plaintiff Great American E&S Insurance Company is incorporated in the state of Ohio with a principal place of business in Cincinnati, Ohio.

6. Defendant Viatek Consumer Products Group, Inc. is incorporated in the state of Tennessee with a principal place of business in Chattanooga, Tennessee.

## JURISDICTION AND VENUE

7. This declaratory relief action is brought pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

8. An actual justiciable controversy exists between Great American and Viatek within the meaning of 28 U.S.C. § 2201 regarding the scope and extent of insurance coverage available under the Policies.

9. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), because the amount in controversy exceeds $75,000, exclusive of costs and interest, and is between citizens of different states.

10. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this Court because the Underlying Action is pending in the Austin Division of the United States District Court, Western District of Texas.

## THE UNDERLYING ACTION

11. The complaint in the Underlying Action was filed on May 16, 2017. ("Underlying Complaint").  A true and correct copy of that Underlying Complaint is attached as Exhibit "1" hereto.

12. The Underlying Complaint brings claims against Viatek for (a) Trade Dress Infringement in Violation of 15 U.S.C. § 1125(A); (b) Trade Dress Dilution in Violation of 15 U.S.C. § 1125(C); (c) Unfair Competition and False Designation of Origin in Violation of 15 U.S.C. § 1125(A); (d) Trade Dress Dilution in Violation of Tex. Bus. & Com. Code § 16.103; (e) Common Law Trade Dress Infringement; (f) Common Law Unfair Competition; (g) Common Law Misappropriation; and (h) Unjust Enrichment.

13. The Underlying Complaint alleges that Viatek violated federal intellectual property statutes, violated state intellectual property statutes, violated the plaintiff's trade dress rights, caused dilution of the plaintiff's trade dress, engaged in unfair competition, caused likely consumer confusion, misappropriated the plaintiff's trade dress, and wrongfully obtained benefits with an undue advantage.  (Exh. "1", ¶¶ 23, 29, 31, 36, 42, 49, 55, 62, 68.)

14. The Underlying Complaint further alleges that Viatek's alleged misconduct was "intentional, willful, and malicious."  (Exh. "1", ¶¶ 26, 33, 39, 46, 52, 58, 65, 72.)

15. Great American received a tender by Viatek of the Underlying Complaint, seeking defense and indemnification.

16. Great American denied a duty to defend and indemnify Viatek in the Underlying Action pursuant to the Policies.

## THE POLICIES

17. Great American issued three different types of policies to Viatek over various years containing the same or similar provisions that preclude coverage, collectively referred to

herein as the "Policies," as follows:

    a.    Policy No. PL 5599841-00, with a policy period of 7.13.05-7.13.06 (the "2005-2006 Primary Policy");

    b.    Policy No. UM 5599842-00, with a policy period of 7.13.05-7.13.06 (the "2005-2006 Umbrella Policy");

    c.    Policy No. PL 5599841-01, with a policy period of 7.13.06-7.13.07 (the "2006-2007 Primary Policy");

    d.    Policy No. UM 5599842-01, with a policy period of 7.13.06-7.13.07 (the "2006-2007 Umbrella Policy");

    e.    Policy No. PL 5599841-02, with a policy period of 7.13.07-7.13.08 (the "2007-2008 Primary Policy");

    f.    Policy No. UM 5599842-02, with a policy period of 7.13.07-7.13.08 (the "2007-2008 Umbrella Policy");

    g.    Policy No. PL 5599841-03, with a policy period of 7.13.08-7.13.09 (the "2008-2009 Primary Policy");

    h.    Policy No. UM 5599842-03, with a policy period of 7.13.08-7.13.09 (the "2008-2009 Umbrella Policy");

    i.    Policy No. PL 5599841-04, with a policy period of 7.13.09-7.13.10 (the "2009-2010 Primary Policy");

    j.    Policy No. UM 5599842-04, with a policy period of 7.13.09-7.13.10 (the "2009-2010 Umbrella Policy");

    k.    Policy No. PL 5599841-05, with a policy period of 7.13.10-7.13.11 (the "2010-2011 Primary Policy");

      l.      Policy No. UM 5599842-05, with a policy period of 7.13.10-7.13.11 (the "2010-2011 Umbrella Policy");

      m.      Policy No. PL 5599841-06, with a policy period of 7.13.11-7.13.12 (the "2011-2012 Primary Policy");

      n.      Policy No. UM 5599842-06, with a policy period of 7.13.11-7.13.12 (the "2011-2012 Umbrella Policy");

      o.      Policy No. PL 3843106-00, with a policy period of 7.13.15-7.13.16 (the "2015-2016 Primary Policy");

      p.      Policy No. XS 3843107-00, with a policy period of 7.13.15-7.13.16 (the "2015-2016 Excess Policy");

      q.      Policy No. PL 3843106-01, with a policy period of 7.13.16-7.13.17 (the "2016-2017 Primary Policy"); and

      r.      Policy No. XS 3843107-01, with a policy period of 7.13.16-7.13.17 (the "2016-2017 Excess Policy").

18. The Primary Policies have limits of $1,000,000 per occurrence, $1,000,000 in personal and advertising injury, and $2,000,000 in general aggregate.

19. The Umbrella Policies have limits of $2,000,000 per occurrence and $2,000,000 in general aggregate.

20. The Excess Policies have limits of $4,000,000 per occurrence and $4,000,000 in aggregate.

21. The Policies contain provisions that limit or exclude coverage for the Underlying Action. Viatek's claim for insurance coverage with respect to the Underlying Action is limited or precluded, in whole or in part, as set forth herein.

22. The 2005-2006, 2006-2007, 2007-2008, 2008-2009, 2009-2010, and 2010-2011 Primary Policies contain Commercial General Liability Coverage Form [CG 00 01 (Ed 10/01)], which includes the following pertinent policy provisions:

**SECTION I – COVERAGES**

\* \* \*

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the Insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

        **(1)** the amount we will pay for damages is limited as described in Section III; Limits of Insurance, and

        **(2)** our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under Coverages **A.** or **B.** or medical expenses under Coverage **C.**

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A.** and **B.**

    **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

    This insurance does not apply to:

    **a. Knowing Violation Of Rights Of Another**

        "Personal and advertising injury" caused by or at the direction of the Insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

\* \* \*

   **c. Material Published Prior To Policy Period**

     "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

* * *

   **i. Infringement Of Copyright, Patent, Trademark or Trade Secret**

     "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

     However, this exclusion does not apply to infringement, in your "advertisement," of copyright, trade dress or slogan.

* * *

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

* * *

14. "Personal and advertising injury" means injury including consequential "bodily injury" arising out of one or more of the following of offenses:

    a. false arrest, detention or imprisonment;

    b. malicious prosecution;

    c. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d. oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** [t]he use of another's advertising idea in your "advertisement"; or

    **g.** infringing upon another's copyright, trade dress or slogan in your "advertisement".

23. The 2005-2006, 2006-2007, 2007-2008, 2008-2009, 2009-2010, and 2010-2011 Primary Policies also contain the "Advertising Injury Amendment" Endorsement [AES 3007], which adds the following exclusion to these policies: "This insurance does not apply to 'advertising injury' arising out of any actual or alleged infringement of intellectual property rights or violation of laws relating to patents, trademarks, trade dress, trade names, trade secrets and know-how."

24. A true and correct copy of the relevant portions of the 2005-2006 Primary Policy is attached as Exhibit "2" hereto. As the 2006-2007, 2007-2008, 2008-2009, 2009-2010, and 2010-2011 Primary Policies contain the same relevant policy provisions, those versions are not attached to this Complaint for the convenience of the Court.

25. The 2011-2012 Primary Policy contains Commercial General Liability Coverage Form [CG 00 01 (Ed. 12/07)], which contains much of the same relevant language as the prior policy years but with some material changes. In this later policy year, the exclusion for "Infringement of Copyright, Patent, Trademark or Trade Secret" (Section I.B.2.i.) was replaced by language in the "Intellectual Property Exclusion Amendment" Endorsement [CG 84 48 (Ed. 08/09)]. The endorsement also modifies the definition of "personal and advertising injury." The new language reads as follows:

    **I.**   **COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**, **2. Exclusions**, **i. Infringement of Copyright, Patent, Trademark or Trade Secret**, is deleted and replaced by the following:

### i. Infringement of Intellectual Property

"Personal and advertising injury" arising out of any actual, alleged, or threatened infringement, misappropriation, or violation of any intellectual property or intellectual property right of any description, including but not limited to any copyright, patent, trademark, trade name, trade secret, trade dress, service mark, or any description of origin, source, authorship, authenticity, or quality.

However, this exclusion does not apply to infringement, in your "advertisement," of a:

**(1)** copyright;

**(2)** slogan, unless that slogan is also a trademark, trade name, trade secret, trade dress, service mark, or description of origin, source, authorship, authenticity, or quality; or

**(3)** title of a literary or artistic work.

**II.** In **SECTION V - DEFINITIONS**, subparagraphs **f.** and **g.** of the definition of "personal and advertising injury" are deleted and replaced by the following:

**f.** infringing, in your "advertisement," upon another's:

**(1)** copyright;

**(2)** slogan, other than a slogan that is also a trademark, trade name, trade secret, trade dress, service mark, or description of origin, source, authorship, authenticity, or quality; or

**(3)** title of a literary or artistic work.

26. A true and correct copy of the relevant portions of the 2011-2012 Primary Policy is attached as Exhibit "3" hereto.

27. The 2015-2016 and 2016-2017 Primary Policies contain Commercial General Liability Coverage Form [CG 00 01 (Ed 04/13)], which contains much of the same relevant language as the prior policy years but with a material change to an exclusion. In these policies, the exclusion for "Infringement of Copyright, Patent, Trademark or Trade Secret" (Section I.B.2.i.) was replaced by language in the "Exclusion – Claims and Suits Alleging Infringement of

Intellectual Property or Unfair Competition" Endorsement [ESG 3258 (Ed 09/14)], which reads as follows:

> i. Claim or "Suit" Alleging Infringement of Intellectual Property
>
> **(1)** Any claim or "suit" that alleges "personal and advertising injury" arising out of any actual, alleged, or threatened misappropriation, infringement, or violation of any intellectual property or intellectual property right or law of any description, including but not limited to any of the following:
>
> * * *
>
> **(f)** trade dress;
>
> * * *
>
> **(j)** description of origin, source, authorship, authenticity, or quality;
>
> **(k)** other right to or law recognizing an interest in any expression, idea, likeness, name, style of doing business, symbol, or title; or
>
> **(l)** any other intellectual property right or law.
>
> This exclusion applies to:
>
> **a.** our duty to defend; and
>
> **b.** our duty to pay damages
>
> whether such misappropriation, infringement, or violation is committed in your "advertisement" or otherwise.

28. In the 2015-2016 and 2016-2017 Primary Policies, the "Exclusion – Claims and Suits Alleging Infringement of Intellectual Property or Unfair Competition" Endorsement [ESG 3258 (Ed 09/14)] also adds the following exclusion to these policies:

> **Claim or "Suit" Alleging Violation of Laws Concerning Unfair Competition or Similar Laws**
>
> Any claim or "suit" that alleges ''personal and advertising injury" arising out of any actual, alleged, or threatened violation of any statutes, common law, or other laws or regulations concerning unfair competition, antitrust, restraint of trade, piracy, unfair trade practices, or any similar laws or regulations.

> This exclusion applies to:
>
> **a.** our duty to defend; and
>
> **b.** our duty to pay damages
>
> whether such violation is committed in your "advertisement" or otherwise.

29.     A true and correct copy of the relevant portions of the 2015-2016 Primary Policy is attached as Exhibit "4" hereto.  As the 2016-2017 Primary Policy contains the same relevant policy provisions, that version is not attached to this Complaint for the convenience of the Court.

30.     The 2005-2006, 2006-2007, 2007-2008, 2008-2009, 2009-2010, 2010-2011, and 2011-2012 Umbrella Policies contain Commercial Umbrella Coverage Form [AES 3100 (Ed. 06/97)], which includes the following pertinent policy provisions:

> **INSURING AGREEMENT**
>
> 1. **COVERAGE** [as amended by **AMENDMENT OF INSURING AGREEMENT – KNOWN INJURY OR DAMAGE** Endorsement GAI 6434 (Ed. 07 99)]
>
>     a. We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," "property damage," "personal injury," or "advertising injury" that takes place during the Policy Period and is caused by an "occurrence" happening anywhere. The amount we will pay for damages is limited as described below in the **Insuring Agreement** Section **II. LIMITS OF INSURANCE**.
>
> \* \* \*
>
> **II. Limits Of Insurance**
>
> \* \* \*
>
> **G. Retained Limit**
>
>     We will be liable only for that portion of damages, subject to the Each Occurrence Limit stated in the Declarations, in excess of the "retained limit," which is the greater of:
>
>     **1.** the total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the

        applicable limits of any other insurance providing coverage to the "Insured" during the Policy Period; or

        **2.** the amount stated in the Declarations as Self-Insured Retention as a result of any one "occurrence" not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other insurance providing coverage to the "Insured" during the Policy Period;

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

Once the Self-Insured Retention has been exhausted by actual payment of "claims" in full by the "Insured," the Self-Insured Retention will not be reapplied or again payable by the "Insured" for said Policy Period.

    **III. Defense**

        **A.** We will have the right and duty to investigate any "claim" and defend any "suit" seeking damages covered by the terms and conditions of this policy when:

        **1.** the applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other insurance providing coverage to the "Insured" have been exhausted by actual payment of "claims" for any "occurrence" to which this policy applies; or

        **2.** damages are sought for any "occurrence" which is covered by this policy but not covered by any underlying policies listed in the Schedule of Underlying Insurance or any other insurance providing coverage to the "Insured."

31.    The 2005-2006, 2006-2007, 2007-2008, 2008-2009, 2009-2010, 2010-2011, and 2011-2012 Umbrella Policies also contain the "Amendment to Advertising Injury and Personal Injury" Endorsement [GAI 64 15 (Ed. 12/98)], which adds an exclusion to the coverage form and modified certain definitions. The new language reads as follows:

    **IV. Exclusions**

        This insurance does not apply to:

                * * *

    **J.** "Personal injury" or "advertising injury":

        **1.** arising out of oral, written, televised, videotaped, or electronic publication of material, if done by or at the direction of the "Insured" with knowledge of its falsity;

        **2.** arising out of oral, written, televised, videotaped, or electronic publication of material whose first publication took place before the beginning of the policy period;

        **3.** for which the "Insured" has assumed liability in a contract or agreement. This exclusion **J.3.** does not apply to liability for damages that the "Insured" would have in the absence of the contract or agreement;

        **4.** caused by or at the direction of the "Insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury" or "advertising injury"; or

        **5.** arising out of a criminal act committed by or at the direction of any "Insured."

* * *

    **K.** "Advertising injury" arising out of:

        **1.** any breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

        **2.** the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

        **3.** the wrong description of the price of goods, products or services stated in your "advertisement"; or

        **4.** an offense committed by an "Insured" whose business is advertising, broadcasting, publishing or telecasting.

* * *

    **V. Definitions**

        **A.** "Advertising injury" means injury, including consequential "bodily injury," arising solely out of advertising activities of any "Insured" as a result of one or more of the following offenses during the policy period:

        **1.** oral, written, televised, videotaped, or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

    **2.** oral, written, televised, videotaped, or electronic publication of material that violates a person's right of privacy;

    **3.** the use of another's advertising idea in your "advertisement";

    **4.** infringing upon another's copyright, trade dress or slogan in your "advertisement"; or

    **5.** mental injury, mental anguish, humiliation, or shock, if directly resulting from Items **A.1.** through **A.4.** of this definition.

* * *

  **K.** "Personal injury" means injury, including consequential "bodily injury," that is other than "advertising injury" and arises out of one or more of the following offenses during the policy period:

    **1.** false arrest, detention or imprisonment;

    **2.** malicious prosecution;

    **3.** the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **4.** oral, written, televised, videotaped, or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

    **5.** oral, written, televised, videotaped, or electronic publication of material that violates a person's right of privacy; or

    **6.** mental injury, mental anguish, humiliation, or shock, if directly resulting from Items **K.1.** through **K.5** of this definition.

* * *

"Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

    32.    The 2005-2006, 2006-2007, 2007-2008, 2008-2009, 2009-2010, 2010-2011, and 2011-2012 Umbrella Policies also contain the "Intellectual Property Exclusion" Endorsement [GAI 6050 (Ed. 06 97)], which adds the following exclusion to these policies: "Any liability arising out of or directly or indirectly related to the actual or alleged publication or utterance or oral or written statements which are claimed as an infringement, violation or defense of any of

the following rights or laws: . . . 4. trade dress; . . . ."

33. The 2005-2006, 2006-2007, 2007-2008, 2008-2009, 2009-2010, 2010-2011, and 2011-2012 Umbrella Policies also contain the "Punitive or Exemplary Damages – Following Form" Endorsement [GAI 6136 (Ed. 06/97)], which excludes coverage for "[a]ny award of, or liability for, punitive or exemplary damages, except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy."

34. A true and correct copy of the relevant portions of the 2005-2006 Umbrella Policy is attached as Exhibit "5" hereto.  As the 2006-2007, 2007-2008, 2008-2009, 2009-2010, 2010-2011, and 2011-2012 Umbrella Policies contain the same relevant policy provisions, those versions are not attached to this Complaint for the convenience of the Court.

35. The 2015-2016 and 2016-2017 Excess Policies contain Excess Liability Coverage Form [AES 3101 (Ed. 06/97)], which includes the following pertinent policy provisions:

### INSURING AGREEMENT

**I. Coverage**

> We will pay on behalf of the Insured the amount of "loss" covered by this insurance in excess of the "Underlying Limits of Insurance" shown in Item **5.** of the Declarations, subject to **Insuring Agreement** Section II., **Limits of Insurance**. Except for the terms, conditions, definitions and exclusions of this policy, the coverage provided by this policy will follow the "first underlying insurance."

\* \* \*

**III. Defense**

> **A.** We will not be required to assume charge of the investigation of any claim or defense of any suit against you.
>
> **B.** We will have the right, but not the duty, to be associated with you or your underlying insurer or both in the investigation of any claim or defense of any suit which in our opinion may create liability on us for "loss." If we exercise such right, we will do so at our own expense, but not after the limits of this policy are exhausted.

36. The 2015-2016 and 2016-2017 Excess Policies also contain the "Exclusion-Claims and Suits Alleging Infringement of Intellectual Property or Unfair Competition" Endorsement [ESU 3144 (Ed 09/14)], which adds exclusions to the coverage form. The new exclusions read as follows:

> **IV. Exclusions**
>
> This insurance does not apply to:
>
> * * *
>
> **1. Infringement of Intellectual Property**
>
> **(a)** Any and all liability and "loss" arising out of any actual, alleged, or threatened misappropriation, infringement, or violation of any intellectual property or intellectual property right or law of any description, including but not limited to any of the following:
>
> * * *
>
> **(g)** trade dress;
>
> * * *
>
> **(k)** description of origin, source, authorship, authenticity, or quality;
>
> **(l)** other right to or law recognizing an interest in any expression, idea, likeness, name, style of doing business, symbol, or title; or
>
> **(m)** any other intellectual property right or law.
>
> **2. Violation of Laws Concerning Unfair Competition or Similar Laws**
>
> Any and all liability and ''loss" arising out of any actual, alleged, or threatened violation of any statutes, common law, or other laws or regulations concerning unfair competition, antitrust, restraint of trade, piracy, unfair trade practices, or any similar laws or regulations.

37. A true and correct copy of the relevant portions of the 2015-2016 Excess Policy is attached as Exhibit "6" hereto. As the 2016-2017 Excess Policy contains the same relevant policy provisions, that version is not attached to this Complaint for the convenience of the Court.

## COUNT I

### Declaratory Relief: No Duty to Defend Viatek in the Underlying Action

38. Great American incorporates by reference the preceding paragraphs as though fully set forth in this Count.

39. There exists a genuine and bona fide dispute and an actual controversy and disagreement between Great American and Viatek about whether Great American has a duty to defend Viatek in connection with the Underlying Action.

40. Viatek contends that Great American has a duty to defend Viatek in connection with the Underlying Action under the Policies.

41. Great American seeks a declaration from this Court confirming that Great American's declination of a duty to defend with respect to the Underlying Action under the Policies and applicable law was correct.

42. In accordance with the insuring agreements, provisions, terms, conditions, exclusions, and endorsements of the Policies, Great American has no duty to defend Viatek in the Underlying Action under the Policies or applicable law for the following reasons:

  a. The Underlying Action does not involve "personal and advertising injury" as that term is defined in the Policies;

  b. The Policies exclude coverage for "personal and advertising injury" arising out the violation of intellectual property rights;

  c. The Policies exclude coverage for "personal and advertising injury" arising out the violation of trade dress;

  d. The Policies exclude coverage for claims alleging violation of description of origin, source, authorship, authenticity, or quality n;

  e. The Policies exclude coverage for claims alleging unfair competition;

    f.   The Policies exclude coverage for claims alleging misappropriation;

    g.   The Policies exclude coverage for "personal and advertising injury" that was caused by or at the direction of the insured with the knowledge that the act would cause the injury; and

    h.   The Policies exclude coverage for "personal and advertising injury" that was first published prior to the inception of the Policies.

43.   Great American also relies upon all additional terms, definitions, exclusions, conditions, and endorsements in the Policies not specifically identified herein that potentially limit or preclude coverage and the duty to defend Viatek under the Policies for the Underlying Action.

## COUNT II

### Declaratory Relief: No Duty to Indemnify Viatek in the Underlying Action

44.   Great American incorporates by reference the preceding paragraphs as though fully set forth in this Count.

45.   There exists a genuine and bona fide dispute and an actual controversy and disagreement between Great American and Viatek about whether Great American has a duty to indemnify Viatek in connection with the Underlying Action.

46.   Viatek contends that Great American has a duty to indemnify Viatek in connection with the Underlying Action under the Policies.

47.   Great American seeks a declaration from this Court confirming that Great American's declination of a duty to indemnify with respect to the Underlying Action under the Policies and applicable law was correct.

48.   In accordance with the insuring agreements, provisions, terms, conditions, exclusions, and endorsements of the Policies, Great American has no duty to indemnify Viatek in

the Underlying Action under the Policies or applicable law for the following reasons:

    a.    The Underlying Action does not involve "personal and advertising injury" as that term is defined in the Policies;

    b.    The Policies exclude coverage for "personal and advertising injury" arising out the violation of intellectual property rights;

    c.    The Policies exclude coverage for "personal and advertising injury" arising out the violation of trade dress;

    d.    The Policies exclude coverage for claims alleging violation of description of origin, source, authorship, authenticity, or quality;

    e.    The Policies exclude coverage for claims alleging unfair competition;

    f.    The Policies exclude coverage for claims alleging misappropriation;

    g.    The Policies exclude coverage for "personal and advertising injury" that was caused by or at the direction of the insured with the knowledge that the act would cause the injury;

    h.    The Policies exclude coverage for "personal and advertising injury" that was first published prior to the inception of the Policies; and

    i.    The Policies exclude coverage for punitive damages.

49. Great American also relies upon all additional terms, definitions, exclusions, conditions, and endorsements in the Policies not specifically identified herein that potentially limit or preclude coverage and the duty to indemnify Viatek under the Policies for the Underlying Action.

## REQUEST FOR RELIEF

WHEREFORE, Great American respectfully requests and prays for the following relief:

    a.    A declaration that Great American owes no duty to defend Viatek under the

Policies in the Underlying Action;

b. A declaration that Great American owes no duty to indemnify Viatek under the Policies for the Underlying Action;

c. A declaration that Great American is entitled to the fees and costs arising from this action, including, without limitation, reasonable attorneys' fees; and

d. A declaration or an award to Great American of such other further relief that this Court deems just, proper, and equitable.

          Respectfully submitted,

By: */s/J. Price Collins*
J. Price Collins
State Bar No. 04610700
price.collins@wilsonelser.com
Thomas M. Spitaletto
State Bar No. 00794679
thomas.spitaletto@wilsonelser.com
**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
901 Main Street, Suite 4800
Dallas, TX 75202-3758
Phone: (214) 698-8000
Fax: (214) 698-1101

**ATTORNEYS FOR PLAINTIFF, GREAT AMERICAN E&S INSURANCE COMPANY**